**John G. McNEIGHT, Vicki L. McNeight, Plaintiffs–Appellants–Cross–Appellees,**

v.

**RAILCAR CUSTOM LEASING, LLC,** Defendant–Cross–Defendant–Cross–Claimant–Appellee Cross–Appellant,

**Allied Waste Systems, Inc.,** Defendant–Cross–Claimant,

**ECDC Environmental, LC,** Defendant–Cross–Claimant–Cross–Defendant–Appellee.*

Nos. 08–5004–cv (L), 08–5102–cv (XAP).

United States Court of Appeals, Second Circuit.

Sept. 4, 2009.

---

* The Clerk of the Court is directed to amend the official caption to confirm to the listing of the parties above.

John Richard Streb, Kenmore, NY, for Plaintiffs–Appellants–Cross–Appellees, John G. McNeight and Vicki L. McNeight.

Brian A. Birenbach, Damon & Morey LLP, Buffalo, NY, for Defendant–Appellee–Cross–Appellant Railcar Custom Leasing, LLC.

Nelson Perel, (Charles E. Graney, on the brief) Webster Szanyi, LLP, Buffalo, NY, for Defendant–Cross–Claimant–Cross–Defendant–Appellee, ECDC Environmental, LC.

PRESENT: DENNIS JACOBS, Chief Judge, ROBERT D. SACK, Circuit Judge, RICHARD W. GOLDBERG,** Judge, U.S. Court of International Trade.

### *SUMMARY ORDER*

Cross appeals from an order of the United States District Court for the Western District of New York (Arcara, *J.*), which adopted *in toto* the report and recommendation of Magistrate Judge H. Kenneth Schroeder, Jr. In sum, the district court granted summary judgment to defendants Railcar Custom Leasing, LLC ("RCL") and ECDC Environmental, LC ("ECDC"), and dismissed plaintiffs' complaint. The district court also dismissed RCL's cross-claims for contractual indemnification as against ECDC. Plaintiffs and RCL both appeal. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

John McNeight worked as a railcar painter at Ebenezer Railcar Services, Inc., in West Seneca, New York. His duties included coupling and decoupling railcars so that they could be moved into the shop for painting. On August 6, 2004, McNeight began decoupling a railcar with call signal AWXX 4121 from its adjacent car. To complete the process, he needed to turn the circular hand brake on the adjacent car. The hand brake was located at the "B" end of the car, somewhere midway up the height of the car. McNeight was standing on the opposite side of the track from the hand brake. He boarded the center sill at the "A" end of the AWXX 4121, and stepped across to "B" end of the adjacent car. He then manually set the

---

** The Honorable Richard W. Goldberg, Senior Judge of the United States Court of International Trade, sitting by designation.

hand brake, and attempted to come back the way he came. Stepping backwards, he placed his left foot on the brake pipe of the AWXX 4121 car, slipped and fell. He fell approximately six feet to the gravel below. He sustained injuries including a herniated disc, a rotator cuff tear, and a compression fracture of a vertebra.

McNeight claims that the AWXX 4121 car lacked a crossover board or step, and had no crossover handhold for him to grab. An accident report identifies the absence of these devices as a cause of the accident.

The AWXX 4121 car was in the process of being refurbished so as to be leased by defendant RCL to defendant ECDC.

■ McNeight sued RCL and ECDC under New York's Scaffold Law, N.Y. Labor Law § 240(1) (McKinney 2009), claiming that the absence of appropriate safety devices was the proximate cause of his injuries. *See, e.g., Toefer v. Long Island R.R.,* 4 N.Y.3d 399, 795 N.Y.S.2d 511, 828 N.E.2d 614 (2005). The district court dismissed this claim on the ground that McNeight was not subject to the type of elevation risk contemplated by the statute, but rather to the usual and ordinary danger of a railyard. (McNeight appeals only the dismissal of the claim as against RCL.)

Labor Law § 240(1) provides in pertinent part:

All contractors and owners and their agents, . . . in the . . . painting, cleaning or pointing of a building or structure shall furnish . . . for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

Labor Law § 240(1). In *Rocovich v. Consolidated Edison Co.,* 78 N.Y.2d 509, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991), the New York Court of Appeals pointed out that while the hazards against which the statute is directed are not spelled out, they can be inferred from the "protective means" set forth in the statute "for the hazards' avoidance." 78 N.Y.2d at 513–14, 577 N.Y.S.2d 219, 583 N.E.2d 932. *Rocovich* held that a worker who had been injured when he slipped into a 12–inch–deep trough had not suffered injury from an elevation-related risk, and so was not within the protection of the statute. *Id.* at 514, 577 N.Y.S.2d 219, 583 N.E.2d 932. Similarly, in *Toefer,* the Court of Appeals held that alighting from the back of a flatbed truck "did not present the kind of elevation-related risk that the statute contemplates." 4 N.Y.3d at 408, 795 N.Y.S.2d 511, 828 N.E.2d 614.

The dispositive question here is not whether McNeight had to clamber over the connector between railcars (which may be an ordinary risk of a work site), but rather whether he was required to do work at an elevation, *i.e.,* to turn the hand brake on the car adjacent to the AWXX 4121. McNeight set the hand brake while standing on the back of the car. He testified that he did not have to climb the ladder on the car to turn the brake, and it was "not too high up." When asked at his deposition whether he could set the break from the ground, McNeight said "maybe," but then later corrected the statement to "I don't think so." *See* Fed.R.Civ.P. 30(e)(1).

■ "The burden of showing that an elevation-related risk exists, and that the owner or contractor did not provide adequate safety devices falls upon the plaintiff." *Broggy v. Rockefeller Group, Inc.,* 8 N.Y.3d 675, 681, 839 N.Y.S.2d 714, 870 N.E.2d 1144 (2007). In *Broggy,* plaintiff, a window washer, claimed he had to stand on a desk to wash windows, but "did not testify how high he could reach with his wand and squeegee while standing on the floor. He asserted that he had to stand on the desk, but provided no evidence to show

that this was because he was required to work at an elevation to clean the interior of the windows." *Id.* Similarly, here, McNeight has not satisfied his burden of showing that his work required him to work at an elevation. Although he may have set the brake while standing on a railcar, there is insufficient evidence in this record that setting the brake *required* him to be exposed to the kind of elevation risk contemplated in the statute. The brake was "not too high up." McNeight's statement that "he did not think" he could set the brake from the ground on the other side is not sufficient to establish that he was required to climb atop anything to set it.

McNeight also appeals the dismissal of his claim under New York's Labor Law § 241(6) (as against RCL only). Labor Law § 241(6) provides that: "All areas in which construction, excavation or demolition work is being performed shall be so constructed ... as to provide reasonable and adequate protection and safety to the persons employed therein...." To state a claim under Labor Law § 241(6), a plaintiff must allege a violation of a particular provision of the New York Industrial Code. *See Ross v. Curtis–Palmer Hydro–Electric Co.,* 81 N.Y.2d 494, 501–02, 601 N.Y.S.2d 49, 618 N.E.2d 82 (1993). The alleged Code violation must be grounded upon a breach of a " 'specific, positive command,' rather than a 'reiteration of common-law standards' which would merely incorporate into the State Industrial Code a general duty of care." *Rizzuto v. L.A. Wenger Contracting Co.,* 91 N.Y.2d 343, 349, 670 N.Y.S.2d 816, 693 N.E.2d 1068 (1998) (quoting *Ross,* 81 N.Y.2d at 504, 601 N.Y.S.2d 49, 618 N.E.2d 82).

McNeight argues that RCL violated 12 N.Y.C.R.R. § 23–1.7(d), which provides that "[e]mployers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform, or other elevated working surface which is in a slippery condition." McNeight claims that the brake pipe on the AWXX 4121, from which he slipped, was wet with morning dew. The district court concluded that a brake pipe is not an "elevated working surface." *See Francis v. Aluminum Co. of Am.,* 240 A.D.2d 985, 659 N.Y.S.2d 903 (3d Dep't 1997) ("the load of steel beams from which the plaintiff fell did not constitute a floor, passageway or elevated area as set forth in the regulation."). Despite McNeight's argument that workers routinely stepped on brake pipes, he has failed to demonstrate that the district court's ruling was in error: a brake pipe being used as a momentary step is not an "elevated work surface."

Finally, RCL appeals the dismissal of its cross-claim for contractual indemnification against ECDC. In light of our dismissal of all claims against RCL, its cross-claim against ECDC is moot. *See, e.g., Wilson v. City of New York,* 89 F.3d 32, 39 (2d Cir.1996).

Finding no merit in the plaintiffs' remaining arguments, we hereby **AFFIRM** the judgment of the district court.